No. 01-321

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 101

STATE OF MONTANA,

        Plaintiff and Appellant,

   v.

JERRY AAKRE,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Mike McGrath, Montana Attorney General, John Paulson, Assistant Montana Attorney General, Helena, Montana; Brant S. Light, Cascade County Attorney, Susan Brooke, Deputy Cascade County Attorney, Great Falls, Montana

        For Respondent:

        Scott Albers, Great Falls, Montana

Submitted on Briefs: December 20, 2001

Decided:  May 10, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1  Jerry Aakre (Aakre) was charged by information on June 21, 1999, with three counts of sexual assault in violation of § 45-5-502, MCA, in the Eighth Judicial District Court, Cascade County. Before trial, one count was withdrawn by the State. After a trial in which the jury found him guilty on one count, Aakre made a motion for a new trial on the grounds that other crimes evidence of previous sexual assaults was improperly admitted against him under our decision in *State v. Sweeney*, 2000 MT 74, 299 Mont. 111, 999 P.2d 296. The District Court granted the motion. Pursuant to § 46-20-103(c), MCA, the State appeals this decision, asserting that the other crimes evidence was properly admitted against Aakre as evidence of common scheme or evidence of absence of mistake or accident.

¶2  We address the following issue on appeal: Did the District Court properly grant Aakre's motion for a new trial on the grounds that evidence of his prior acts was erroneously admitted during his trial for sexual assault?

¶3  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4  On June 21, 1999, Aakre was charged by information with three counts of sexual assault against his step-granddaughter, A.S. Before trial the State gave notice, as required by the modified *Just* rule, of its intent to introduce evidence of Aakre's other crimes. The State intended to introduce evidence that Aakre pled guilty to continuous sexual assaults over a two year period against two stepdaughters from a previous marriage 16 years earlier. In its brief in support of its *Just* notice, the State only offered testimony from one of the stepdaughters. Aakre opposed the introduction of this evidence.

¶5 In the prior crimes, Aakre asked his stepdaughter to come to his bedroom when her mother was absent, directed her to take her pants down, stroked her vagina with his index finger, and kissed her on the mouth. Further, he had her rub initially his stomach and then his penis. In the alleged crime, i.e., the current charges, Aakre's acts were similar, except for the allegation that he would place A.S. on his pelvis and move her back and forth rather than have her rub his stomach.

¶6 The District Court ruled that the evidence properly conformed to the requirements of the *Just* rule and allowed the evidence to be introduced. The District Court found that the crimes involved in the prior guilty plea and the alleged crimes on trial were sufficiently similar to establish a plan or modus operandi because of the similarity of the incidents and because both involved a continuous pattern of conduct rather than a single instance of conduct.

¶7 The jury found Aakre guilty of the count of continuous sexual assault while in the home and not guilty on the second count which alleged a sexual assault in a vehicle. After trial, Aakre moved for a new trial on the grounds that the other crimes evidence was improperly admitted under our decision in *Sweeney*. The District Court granted the motion, concluding that *Sweeney* controlled the admission of other crimes evidence in Aakre's case. The State now appeals, asserting that the District Court erred because Aakre's prior plea was admissible as evidence of common scheme or absence of mistake or accident.

## II. STANDARD OF REVIEW

¶8 We review a trial court's decision to grant a new trial for abuse of discretion. *State v. Bell* (1996), 277 Mont. 482, 485, 923 P.2d 524, 526. Evidentiary rulings regarding whether evidence is relevant and admissible are also reviewed for abuse of discretion. *State v. Whitlow* (1997), 285 Mont. 430, 437, 949 P.2d 239, 244. Determinations of law integral to the grant of a new trial are

reviewed *de novo*. *Bell,* 277 Mont. at 486, 923 P.2d at 526.  While we have applied the abuse of discretion standard to other crimes issues, we have not specifically stated the standard of review applicable to rulings on other crimes evidence under the *Just* rule.  Because the admission of other crimes is directed to the relevance and admissibility of such evidence, we now specifically hold that we will review a trial court's decision on whether to admit evidence of other crimes, wrongs or acts under Rule 404(b), M.R.Evid., for abuse of discretion.

¶9      There are four substantive criteria under Rule 404(b), M.R.Evid., that must be met before evidence of other crimes, wrongs or acts can be admitted in the trial of the current charge.  These criteria were stated in *State v. Just* (1979), 184 Mont. 262, 602 P.2d 957, were modified by *State v. Matt,* and are as follows:

> (1) The other crimes, wrongs or acts must be similar.
>
> (2) The other crimes, wrongs or acts must not be remote in time.
>
> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*State v. Matt* (1991), 249 Mont. 136, 142, 814 P.2d 52, 56.  In this case, the only criteria at issue is the third prong of the *Just* rule, the purpose of proof for which the evidence is offered.

¶10     The District Court found that evidence of Aakre's prior guilty plea should not have been admitted at trial under our decision in *Sweeney* and therefore granted the motion for a new trial.  The State now argues that Aakre's previous crimes were properly admitted as evidence of common

4

scheme and as evidence of absence of mistake or accident. The State asserts that the District Court incorrectly applied *Sweeney* to the facts of this case. *Sweeney* involved whether the admission of a defendant's prior conviction for sexual assault against his stepdaughter was properly admitted in the defendant's trial of sexual assault against his niece which allegedly occurred seven years later. *Sweeney*, ¶¶ 7, 15. We held that the prior conviction did not satisfy the *Just* rule and should not have been admitted as evidence of identity, intent, motive, or knowledge. *Sweeney*, ¶ 35.

¶11 While *Sweeney* did not directly address the issue of common scheme or the issue of absence of mistake or accident, *Sweeney* does require that each allowable purpose under Rule 404(b), M.R.Evid, asserted by the State be analyzed by a trial court to determine whether the evidence supports that specific purpose. *Sweeney*, ¶ 23 (analysis addresses each purpose identified by the State). *Sweeney* teaches that before other crimes evidence can be admitted under Rule 404(b), M.R.Evid., the purpose justifying the admission of the evidence must be at issue in the current charge. For example, if intent is not at issue, then other crimes evidence on that point is not admissible under the third prong of the modified *Just* rule. *See Sweeney*, ¶ 22-36. We hold here, as discussed below, that the District Court did not abuse its discretion in granting Aakre a new trial because the prior acts evidence should not have been admitted in Aakre's first trial as evidence of either common scheme or absence of mistake or accident.

## III. DISCUSSION

### A. Common Scheme

¶12 Under Rule 404(a), M.R.Evid., evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. The purpose of this rule is to prevent convictions that are merely based on a jury finding that someone

5

has a propensity to do certain things. *Sweeney*, ¶ 35. The rule furthers the purpose to inform the defendant of the charges against him, *Just*, 184 Mont. at 273, 602 P.2d at 963; prevents convictions based on finding the defendant is a bad person, *State v. Tiedemann* (1961), 139 Mont. 237, 242, 362 P.2d 529, 531; and prevents convictions for one crime based on evidence of another, *Matt*, 249 Mont. at 143, 814 P.2d at 56 (requiring jury instruction to emphasize that the defendant is not being tried and may not be convicted for any offense except that charged); *see also State v. Sanders* (1971), 158 Mont. 113, 119, 489 P.2d 371, 374. Further, in order to uphold the intent of the rule, exceptions to this rule must be clearly justified and carefully limited. *Sweeney*, ¶ 16.

¶13     Exceptions are allowed by Rule 404, M.R.Evid., when character is in issue or when past acts that may have character implications nonetheless serve as independent proof of a material issue. Rule 404(b), M.R.Evid., allows admission when other crimes, wrongs or acts prove motive, opportunity, intent, preparation, knowledge, identity, absence of mistake or accident, or, as discussed here, when other crimes prove defendant's "plan."

¶14     "Plan," though referred to in Rule 404(b), is not a defined term of art in the context of Title 45. Notwithstanding, a "plan" is nothing more than "a method for achieving an end." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 889 (10th ed. 1997). This definition of "plan" is encompassed within the definition of "common scheme" under § 45-2-101(7), MCA. Under § 45-2-101(7), MCA, "common scheme" is defined as:

> a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan that results in the repeated commission of the same offense or that affects the same person or the same persons or the property of the same person or persons.[1]

_____

[1] We note that the definition of "common scheme" under § 45-2-101(7), MCA, is

¶15     While we usually discuss the statutory definition of "common scheme" in cases involving theft or forgery where the charging information specifically cites the statute, for Rule 404(b) purposes, our prior case law, nonetheless, typically uses the phrase "common scheme" in conjunction with and interchangeably with the word "plan." *See for example State v. Rogers*, 1999 MT 305, ¶ 39, 297 Mont. 188, ¶ 39, 992 P.2d 229, ¶ 39.

¶16     Accordingly, where the admissibility of other crimes, wrongs or acts is at issue under Rule 404(b), we now hold that, in the context of criminal cases and for purposes of the *Just/Matt* test, "plan" and "common scheme" are synonymous.

¶17     Whether there is a common scheme involves a case by case analysis of the defendant's actions. *Rogers*, ¶ 39. Turning, then, to the statutory definition, the evidence of the prior crimes admitted under the *Just* rule in this case did not involve the "same person or the same persons or the property of the same person or persons." Aakre's prior offense--involving two other stepdaughters--did not involve the same person or persons in the current charge, namely, A.S. *See Just*, 184 Mont. at 269, 602 P.2d at 961 (prior acts involved the same victim); *State v. Medina* (1990), 245 Mont. 25, 31, 798 P.2d 1032, 1036 *overruled on other grounds by State v. Olson* (1997), **286 Mont. 364, 951 P.2d 571**; *State v. Gilpin* (1988), 232 Mont. 56, 756 P.2d 445; *see also State v. Henderson* (1996), 278 Mont. 376, 382, 925 P.2d 475, 479 (father manipulating sons to perform sexual acts with daughter was evidence of common scheme in father's trial of sexual intercourse

---

virtually identical to the definition of "same transaction," as set forth under § 46-1-202(23), MCA.

without consent against daughter); *State v. Murray* (1987), 228 Mont. 125, 134, 741 P.2d 759, 764-65 (prior disciplinary acts of mother against daughter in trial of beating death were admissible as common scheme).

¶18    Further, the evidence of the prior crimes admitted in the case at bar did not prove that Aakre "was motivated by a purpose to accomplish a single criminal objective." This part of the "common scheme" definition contemplates the demonstration of an overall plan with interrelated or sequential crimes that require overlapping proof and where commission of one crime depends on the commission of another. *See State v. Southern*, 1999 MT 94, ¶ 23-24, 294 Mont. 225, ¶ 23-24, 980 P.2d 3, ¶ 23-24 (counts of kidnaping, burglary, theft, and sexual intercourse without consent were part of a common scheme); *State v. Davis* (1992), 253 Mont. 50, 59, 830 P.2d 1309, 1315-16 (tampering with evidence from another crime during investigation of sexual assault made proof overlap on tampering charge, so other crime was admissible); Edward J. Imwinkelried, *Using a Contextual Construction to Resolve the Dispute over the Meaning of the Term "Plan" in Federal Rule of Evidence 404(b)*, 43 U. Kan. L. Rev. 1005 (discussing interpretations of the word "plan" in Rule 404(b), Fed.R.Evid.) (hereinafter Imwinkelried). Here, the other crimes evidence did not show that Aakre's commission of the current charge was part of an overall plan involving interrelated or sequential crimes that require overlapping proof or where the commission of one crime depends on the commission of another.

¶19    Rather, under the definition of common scheme applicable here, it was the burden of the State to show that the other crimes evidence went to prove that Aakre was motivated by "a common purpose or plan that results in the repeated commission of the same offense."

¶20    With regard to this part of the statutory definition of common scheme, we have held that a

8

common scheme exists where a defendant employs distinctive or idiosyncratic methods to lure victims into vulnerable positions that enable sexual assault. *See State v. Martin* (1996), 279 Mont. 185, 195, 926 P.2d 1380, 1386-87 (defendant asked each minor victim to help with work at his cabin, gave each victim excessive alcohol); *State v. Brooks* (1993), 260 Mont. 79, 81, 857 P.2d 734, 735 (systematic plan to entertain boys in recreational pool setting in which they feel comfortable while basically unclothed, then catching them off-guard with sexual assault constituted common scheme); *State v. Norris* (1984), 212 Mont. 427, 431-32, 689 P.2d 243, 245 (luring victims to motel by asking them to babysit his kids, then sexually assaulting them established common scheme); *State v. Jensen* (1969), 153 Mont. 233, 238-39, 455 P.2d 631, 634 (testimony of twelve other witnesses concerning sexual advances of defendant was properly admitted because it established three year continuous pattern in which chiropractor sexually assaulted patients in his office); *see also State v. Powers* (1982), 198 Mont. 289, 299, 645 P.2d 1357, 1363 (unusually harsh discipline by other church members against other children is admissible to show common design of punishment policy of the church); *State v. Riley* (1982), 199 Mont. 413, 426, 649 P.2d 1273, 1280.

¶21    This "distinctive methods" application of the common scheme or plan definition is essentially the same as the test we articulated under *Sweeney* for the admission of other crimes to prove identity. *Sweeney,* ¶ 31 ("other crime or act must be sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue.")


¶22    In other cases discussing common scheme, we have held that similarity between the prior crime and the alleged crime on trial is sufficient for admissibility, especially in the context of sex crimes. *State v. Tecca* (1986), 220 Mont. 168, 173, 714 P.2d 136, 139 (nine years of continuous

molestation of various minor girls in the same household, which ceased only during the years defendant was away in the military, was evidence of common scheme and therefore admissible at trial involving only one of the victims); *State v. Wurtz* (1981), 195 Mont. 226, 236, 636 P.2d 246, 251 (driving by women and calling obscenities and threats to them showed a common scheme to achieve intended result of intimidation) *overruled on other grounds by State v. Lance* (1986), 222 Mont. 92, 721 P.2d 1258; *State v. Eiler* (1988), 234 Mont. 38, 50, 762 P.2d 210, 217-18 (common scheme shown by tendency to have sexual interest in and parental control over young girls; prior act of defendant against previous stepdaughter was held admissible); **State v. Gambrel (1990), 246 Mont. 84, 90, 803 P.2d 1071, 1075 (prior acts of defendant against three other live-in partners over four years showed that after he had been drinking, his course of conduct included death threats, sexual assaults and beatings, which showed a common scheme with murder of victim in case at trial);** *State v. Long* (1986), 223 Mont. 502, 507, 726 P.2d 1364, 1367 (due to subtle nature of child abuse, evidence of prior act of rubbing minor's bottom is similar enough to alleged acts of pulling down pants of other minors and touching their vaginas to justify its admission as common scheme); *see also cases with similar facts where common scheme was not discussed;* **State v. McKnight (1991), 250 Mont. 457, 463-64, 820 P.2d 1279, 1283 (although defendant asserted merely similar acts of sexual advances on other children could not constitute common scheme, Court did not discuss common scheme and held prior acts were admissible as evidence of motive or intent prior to the holding in** *Sweeney***);** *Whitlow***, 285 Mont. 430,** 949 P.2d 239; *Sweeney*, ¶ 7, 15; *State v. Crist* (1992), 253 Mont. 442, 446, 833 P.2d 1052, 1055.

10

¶23    In contrast, we have also held that mere similarity is insufficient to show common scheme. *See Rogers*, ¶ 41 (defendant's acts of sexual aggression following barroom encounters are dictated by his character and the situation at hand; they do not reflect a systematic plan); *State v. Hansen* (1980), 187 Mont. 91, 98, 608 P.2d 1083, 1087 (barroom pickups, powered by the urge, and consummated in automobiles, are too common to show scheme); *State v. Sauter* (1951), 125 Mont. 109, 112, 232 P.2d 731, 732; *State v. Adams* (1980), 190 Mont. 233, 236, 620 P.2d 856, 858 (two similar thefts of coins from jukeboxes were not part of a common scheme because the offenses were linked by similarity and nothing more).

¶24    As part of this discussion, it is worth noting that prior to our adoption of the current *Just/Matt* rule, we addressed other crimes evidence in the context of common scheme or plan in *State v. Merritt* (1960)*,* 138 Mont. 546, 357 P.2d 683.  In that case, we stated:

> Thus in 22 C.J.S. Criminal Law § 688, p. 1109, et seq., it is said: "As a general rule, evidence of other crimes than that charged is competent when it tends to establish a common scheme, plan, system, design, or course of conduct, at least where such other crimes are similar to, and closely connected with, the one charged, and were committed at about the same time or at a time not too remote.  Another statement is that evidence of other crimes is admissible to prove the crime charged when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other or others."

*Merritt*, 138 Mont. at 548-49, 357 P.2d at 684.

¶25    This discussion illustrates that the first two elements of the modified *Just* rule--i.e., similarity of crimes and nearness in time between the crimes--were, prior to the adoption of our current rule, considered part and parcel of the determination of whether a common scheme existed.  In other words, in the context of determining whether there existed a common scheme or plan for the purpose of other crimes evidence prior to the adoption of Rule 404(b), it was necessary to consider similarity and nearness in time together rather than as independent elements.  *See Jensen*, 153 Mont. at 239,

11

455 P.2d at 634 (citing *Merritt*). *Merritt* has never been overruled and remains good law.

¶26     While remoteness in time is a separate prong under the current modified *Just* rule, *Merritt* demonstrates that where common scheme or plan is at issue, it is necessary to consider the similarity of crimes and nearness in time between the crimes as part and parcel of the analysis. Indeed, for Rule 404(b) purposes we conclude that proof of mere similarity of crimes is insufficient, on a stand alone basis, to demonstrate a "common purpose or plan that results in the repeated commission of the same offense." Rather, application of this definition of common scheme also requires showing that the crimes occurred within a time frame that supports the conclusion that the similar offenses were committed to achieve a common purpose or plan related to the commission of the current charge. To conclude otherwise would allow a common scheme to be proven by the simple expedient of aggregating similar criminal acts without regard to the time frame within which those acts occurred and without regard to whether those acts were actually part of a common purpose or plan to commit the offense at issue. In short, the limited purpose for allowing common scheme evidence under Rule 404(b) would be effectively nullified.

¶27     Indeed, we have previously considered the time element crucial to common scheme analysis. For example, we held that writing almost 200 bad checks over a period of a year and half constituted common scheme in part because "acts which closely follow one another evidenc[e] a continuing criminal design." *State v. Fleming* (1987), 225 Mont. 48, 51, 730 P.2d 1178, 1180; *see also State v. McHugh* (1985), 215 Mont. 296, 301, 697 P.2d 466, 470.

¶28     **Furthermore, considering nearness in time as a part of common scheme is consistent with the overall purpose of Rule 404, M.R.Evid.--to prevent the admission of other crimes simply to show a defendant's character and action in conformity with that**

12

**character.** *See State v. Ray* (1994), 267 Mont. 128, 132-34, 882 P.2d 1013, 1015-16 (prior sexual assault 16 years earlier was too remote to the charged conduct and consequently unjustly prejudicial to defendant).

¶29 Notwithstanding that the cases cited in ¶ 22 did not factor time frame analysis into common scheme or plan, we now make that a requirement in this and future cases.

¶30 Turning then to the case at bar, here the District Court found that the other crimes evidence was not too remote in time under the second prong of the *Just* rule because Aakre supposedly did not have an opportunity between his two marriages to sexually assault a stepchild. We disagree with the trial court's determination in the following respect. We conclude that the 16 year time span between Aakre's prior acts and the offenses on trial were simply too remote to constitute a common scheme or plan such that Aakre's acts resulted in the "repeated commission of the same offense." There was no demonstration by the State that Aakre's conduct 16 years ago was committed as part of a common purpose or plan to commit the charged offenses. Aakre's conduct then and now may be similar, but that, on a stand alone basis, does not prove a common scheme or plan in the legal sense where 16 years separates the prior acts from the current charges.

¶31 Like the arguments in *Sweeney*, the State's argument here boils down to one that Aakre is a sexual predator and that Aakre's acts of sexual aggression are dictated by his character and the situation at hand. That may well be true, but Rule 404(a) requires that Aakre be convicted of the crimes with which he is charged on the basis of evidence that proves more than simply his bad character. More to the point, on the facts here, Rule 404(b), specifically common scheme or plan, does not provide the exception to Rule 404(a) which the State seeks.[2]

---

[2] We note, as we did in *Sweeney*, ¶ 36, that the federal exceptions to the other crimes rule

13

for sex crimes have not been enacted in Montana. *See* Rule 413, Fed.R.Evid., ("In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible"); Rule 414, Fed.R.Evid., ("In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible").  If there is to be an automatic exception to Rule 404(b), M.R.Evid., in Montana regarding sex crimes, then it is appropriate for the Legislature to address this issue.

¶32    Finally, in the majority opinion in *In re C.R.O.*, 2002 MT 50, 309 Mont. 48, 43 P.3d 913, the author, Justice Rice, makes an observation that is applicable to his dissent in the case at bar: "The dissent[] offer[s] arguments which tug at the heart, but miss[es] the law." *C.R.O.*, ¶ 23.

¶33    The dissent contends that the majority has not cited authority for equating the terms "plan" and "common scheme." Paragraphs 14 and 15 of the Court's opinion do precisely that. To the contrary, it is the dissent that fails to provide authority for the conclusion that "'plan' is different and narrower than 'common scheme.'"

¶34    Furthermore, rather than emasculating Rule 404(b) as the dissent suggests (again without analysis or reference to any particular cases), *Sweeney* and our Opinion here attempt to honor the plain language and intended historical purposes of the Rule. These purposes include protecting the presumption of innocence; limiting the trial evidence to the act alleged; fostering efficiency at trial by avoiding mini-trials on the uncharged conduct, *see* Andrew J. Morris, *Federal Rule of Evidence 404(b): The Fictitious Ban on Character Reasoning from Other Crime Evidence*, 17 REV. LITIG. 181, 185-86; and, preventing the admission of uncharged conduct as circumstantial proof of charged conduct except where the uncharged conduct possesses "independent" or "special" probative value relevant to a non-character theory. Imwinkelried, at 1007. More simply, read together, Rules 404(a) and (b) prohibit "the prosecutor from urging the jury to reason simplistically, 'He did it once; therefore, he did it again.'" Imwinkelried, at 1006.

¶35    Worse, the dissent's preference for enlarging the use of other crimes evidence under the guise of "plan" runs directly counter to the "Rule's intended purpose and historical application" that the dissent seemingly seeks to preserve. As noted by Professors Mendez and Imwinkelried:

> In recent years, the plan doctrine has proven to be one of the most controversial theories for admitting uncharged misconduct. Some critics have

charged that by irresponsibly invoking the theory without careful analysis, many courts have converted plan into a "euphemism" for bad character, and have allowed the theory to degenerate into "a dumping ground" for inadmissible bad character evidence.

Miguel A. Mendez and Edward J. Imwinkelried, *People v. Ewoldt: The California Supreme Court's About-Face on the Plan Theory for Admitting Evidence of an Accused's Uncharged Misconduct*, 28 LOY. L.A. L. REV. 473, 478-79.

¶36 There is no legitimate reason for this Court to travel a similar route, as suggested by the dissent. If other crimes, wrongs or acts are to be admitted as proof of the common scheme or plan at issue, then the prosecution bears the burden of establishing that the prior crimes, wrongs or acts were, in fact, part and parcel of the accused's common purpose or plan to commit the current charge. Put another way, the government must prove that the prior crimes, wrongs or acts and the charged offense are linked as integral components of the defendant's common purpose or plan to commit the current charge.

¶37 Indeed, to hold otherwise allows the "plan" exception of Rule 404(b) to swallow the general rule expressed in Rule 404(a) and exposes the accused to the very real likelihood that the jury will determine guilt, not on the basis of the State's evidence of the current offense, but, rather, on the basis of the jury's belief that the defendant's past character is an accurate predictor of his present conduct. This, historically, was precisely what Rule 404(b) was adopted to prevent.

¶38 We hold the District Court did not abuse its discretion in granting Aakre's motion for a new trial and, accordingly, affirm as to this issue.

**B. Absence of Mistake or Accident**

¶39 The State also asserts on appeal that Aakre's prior acts were properly admitted under the *Just* rule as evidence of absence of mistake or accident. We disagree.

16

¶40	In its opening brief the State points to the fact that Aakre presented evidence that Alice Violet "Vi" Aakre (Violet), i.e. Aakre's wife and A.S.'s grandmother, believed that on one occasion Aakre properly touched A.S., at her request, in order to check for possible bruising from abuse from another person. The State maintains that, with this evidence, "Aakre put his knowledge and intent at issue by explaining that the touching was for a reason other than his sexual gratification, and the other acts evidence was relevant and admissible, under Rule 404(b) and *State v. Whitlow* [(1997), 285 Mont. 430, 949 P.2d 239], to show the absence of mistake or accident." Aakre argues that he was forced to put on this evidence by the erroneous ruling of the trial court admitting his prior crimes.

¶41	In its reply brief, the State concedes that while Aakre did not testify "and therefore did not claim to have committed the charged acts mistakenly or accidentally" the evidence of the 1996 incident testified to by Violet did raise the issue of mistake or accident.

¶42	Our review leaves us unpersuaded by the State's arguments. As the State concedes, Aakre did not try to use the defense of mistake or accident as regards the commission of the current charges. Aside from concluding, without analysis, that the grandmother's testimony placed absence of mistake or accident at issue, the State does not further develop this argument or relate it to any case law. *See* Rule 23(a)(4), M.R.App.P. Moreover, the State's citation to *Whitlow*, 285 Mont. 430, 949 P.2d 239, is not helpful. The other crimes evidence on the issue of absence of mistake or accident in that case went directly to a defense which Whitlow himself raised. *Whitlow,* 285 Mont. at 440, 949 P.2d at 245-46.

¶43	As we noted above, *Sweeney* requires that each purpose for which evidence is offered be at issue and be independently analyzed. It is well settled that the trial court's decision is presumed

17

correct and that the appellant bears the burden of establishing error. *In re M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, ¶ 18, 961 P.2d 105, ¶ 18.  Here, there was no issue that Aakre mistakenly or accidentally touched A.S. as regards the current charges offense, and we have not been presented with any persuasive analysis or citation to authority leading us to conclude that the District Court erred.  As we did on the issue of common scheme and plan, we affirm the trial court's determination not to allow other crimes evidence for purposes of proving absence of mistake or accident.

¶44     Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶45    I dissent.

¶46    In this decision, the Court continues its deliberate emaciation of Rule 404(b), Mont.R.Evid. There is little that remains of the Rule. Further, without saying so, the Court overrules many virtually indistinguishable cases, such as *State v. Eiler* (1988), 234 Mont. 38, 762 P.2d 210, in which the Court validated the kind of evidence offered here.

¶47    The Court completely removes "plan" from Rule 404(b). There is no further need for the word to exist within the Rule, because its particular meaning has been deleted. Despite the Rule's specific mention of the word, the Court, finding the word used within the definition of "common scheme" found at § 45-2-101(7), MCA, eliminates the independent meaning of "plan," holding in ¶16 that "plan" is identical with, and has been subsumed by, the term "common scheme." To the contrary, these terms are not synonymous. "Plan" is different and narrower than "common scheme." The word as used within Rule 404(b) authorizes introduction of other crimes or wrongs for the purpose of establishing an actor's preparation, design or motive. The Rule does not require proof of a "series of acts" which is implicated within a "common scheme."

¶48    The Court then further narrows Rule 404(b) by grafting the statutory definition of common scheme within the Rule itself:

> [F]or Rule 404(b) purposes we conclude that proof of mere similarity of crimes is insufficient, on a stand alone basis, to demonstrate a "common purpose or plan that results in the repeated commission of the same offense." Rather, application of this [statutory] definition of common scheme also requires showing that the crimes occurred within a time frame that supports the conclusion that the similar offenses were committed to achieve a common purpose or plan related to the commission of the current charges. [¶ 26]

19

Thus, the Court now requires that Rule 404(b) evidence establishing "plan" must consist of: similar offenses -- committed near in time -- for the purpose of achieving a common scheme (see statutory definition in § 45-2-101(7), MCA) -- that was specifically "related to the commission of the current charge." *See* ¶ 26. Regrettably, the Court has restricted the application of Rule 404(b) to a very limited set of circumstances that bears little relation to the Rule's intended purpose and historical application. The Court offers no authority which mandates such a holding, nor any reason to eradicate the simple concept of "plan" from the law, only satisfying its continuing desire to eliminate the introduction of similar evidence in criminal cases as a matter of policy preference, evident by its ever-increasing constriction of the Rule.

¶49    The sexual crime committed against the young girl by the defendant in this case was remarkably similar to the defendant's previous violation of another young girl, similar in age, within similar family relations, in a similar location of the house, with a similar tactic to isolate the girl, involving similar sexual actions, engaging in a similar long term pattern of sexual abuse of the child, during the next consecutive marital period of the defendant. For this Court, however, that is not similar enough.

¶50    If I were intent on changing the Rule to reflect a policy preference, I would first consider the enormous challenge faced by a young, vulnerable, abused child who must carry the evidentiary load for the State in what is often a "my word against yours" trial against a manipulative defendant who held a position of trust over the child. After that child has borne the burdens which our system must necessarily place upon her to testify against the defendant, and in the face of the defendant's denial of the charge, I would allow the State to introduce evidence of a defendant's extremely similar abuse of another child to demonstrate the very specific plan he also used to abuse this child, as well as to

20

demonstrate his motive for the crime, and his knowledge of his crime, an element the State must prove. In so allowing, a legitimate public policy would be served, and further, the intended purpose of Rule 404(b) would be fulfilled.

¶51 I would reverse the District Court and affirm the jury's verdict convicting the defendant herein.


/S/ JIM RICE